**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ANDREW M.,

               Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

Civil Action No.: 22-05070 (CCC)

**OPINION**

**CECCHI, District Judge.**

## I.    <u>INTRODUCTION</u>

Before the Court is the appeal of Andrew M.[1] ("Plaintiff") seeking review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("SSA"). ECF No. 1; *see also* ECF Nos. 9 ("Pl. Br."), 16 ("Pl. Reply Br."). The Commissioner opposed the appeal. *See* ECF No. 15. This matter is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed.

## II.    <u>BACKGROUND</u>

Plaintiff, an adult male, was born on July 6, 1960, and was 52 years old at the onset of his alleged disability. ECF No. 5 ("Tr.") at 755. Plaintiff is a college graduate, and had previously worked as a computer systems maintenance administrator for roughly 15 years. *Id.* at 41, 755.

---

[1] Pursuant to District of New Jersey standing order 2021-10, "any non-governmental party will be identified and referenced solely by first name and last initial" due to privacy concerns present in social security cases. D.N.J. Standing Order 2021-10; *see also Bryan S. v. Kijakazi*, No. 20-cv-11145, 2022 WL 2916072, at *1 n.1 (D.N.J. July 25, 2022).

Plaintiff has not engaged in any full-time employment since August 2012.[2]  *Id.* at 41.  The relevant period of Plaintiff's alleged disability is from August 30, 2012, through June 30, 2016, the date last insured.  Tr. at 39, 753.

> **A.      Plaintiff's Administrative Hearing Testimony**

Plaintiff testified at his March 16, 2020, administrative law hearing that he suffers from anxiety and depression.  *Id.* at 756.  He further testified that, as a result, he suffers from stress and time management issues, and exhibits argumentative and impatient behavior.  *Id.*  Plaintiff stated that, in the time leading up to 2012, he began sleeping excessively and taking naps at work ranging from 30 minutes to two hours.  *Id.* at 757, 759.  While Plaintiff testified that he would have "meltdowns," exhibited through defensive and argumentative behavior, he only occasionally experienced them at work.  *Id.* at 761.  This behavior made his interactions with work supervisors "uncomfortable," which inhibited Plaintiff's ability to attend work.  *Id.* at 762-63.  Plaintiff also stated that he would still "have difficulty staying on task" were he to attempt work involving limited interaction with others.  *Id.* at 773.  He testified that he has difficulty concentrating on simple tasks beyond ten minutes.  *Id.* at 778.  Outside of work, Plaintiff stated he has withdrawn from social situations and tends to isolate himself.  *Id.* at 776.  Plaintiff testified that he also experiences headaches and fatigue, but that such symptoms had never been formally diagnosed.  *Id.* at 766-68.  Further, it was confirmed at the administrative hearing that there was no evidence in the record suggesting Plaintiff underwent independent cognitive testing during the period of 2012 to 2016.[3]  *Id.* at 772-73.

---

[2] Plaintiff otherwise completed a three-week, 16-hour maintenance job in 2014.  Tr. at 40-42, 845.

[3] Plaintiff's wife also testified that Plaintiff "has difficulty with directions" and that directions must be repeated "over and over again" because he forgets or loses focus.  Tr. at 780.  She stated that "[h]e sleeps a lot.  He doesn't understand a lot.  And [ ] I've noticed a decline with his ability to understand more, his desire to go out, his own personal hygiene."  *Id.* at 781.

At his March 2020 administrative hearing, Plaintiff testified that he was providing care for his ill wife in and around 2016, which included doing household chores and going to the grocery store. *Id.* at 769. He also stated that he is comfortable lifting 15 pounds of weight. *Id.* at 768. At Plaintiff's initial November 2016 administrative law hearing, he elaborated that, because of his wife's physical limitations, he needed to assist her with showering, bathing, dressing, driving and meal preparation. *Id.* at 47-48. Plaintiff is able to drive and, during the relevant time period, was performing household chores on a daily basis, albeit Plaintiff stated that he was "not doing very well at" them. *Id.* at 48.

### B.   Medical Observations

A number of medical professionals provided opinions on Plaintiff's condition in this case, including Plaintiff's treating psychiatrist Mehr Igbal, M.D. Tr. at 307-08, 854. Dr. Igbal began treating Plaintiff in July 2014 and completed his mental health assessment three months later in October 2014. *Id.* at 308. Dr. Iqbal opined that Plaintiff has a "persistent irrational fear of a specific object, activity, or situation, which results in a compelling desire to avoid the dreaded object, activity or situation." *Id.* at 307. He further opined that Plaintiff experienced "[r]ecurrent intrusive recollections of traumatic experience, which are a source of marked distress." *Id.* He found that, while Plaintiff's restrictions on daily living were only moderate, his difficulties in maintaining social functioning, concentration, and persistence or pace were marked. *Id.* at 308. Finally, Dr. Iqbal opined that Plaintiff was unable to manage his own affairs without the help of family or friends, and had "limited social and cognitive ability." *Id.*

Plaintiff also met with Harold Goldstein, M.D., a psychology specialist, who provided a medical opinion dated July 17, 2014. *Id.* at 276-78, 854. Dr. Goldstein opined that Plaintiff was "adequately groomed" and his "appearance was consistent with his stated age." *Id.* at 278. Dr. Goldstein further opined that Plaintiff's "speech was normal in pace and tone" with "no evidence

of psychomotor impairment," and his "mood was neutral and his affect was full and appropriate." *Id.* Dr. Goldstein observed "[n]o evidence of psychotic symptoms" or "thought disorder." *Id.* He also reported that Plaintiff was able to accurately complete a number of cognitive tasks, including counting backwards from 100 in increments of seven, answering arithmetic word problems, and spelling words backwards. *Id.* Ultimately, Dr. Goldstein opined that Plaintiff's "fund of knowledge was good, his abstract reasoning was not impaired" and he "does appear capable of managing his own funds." *Id.*

Plaintiff's condition was also assessed by State agency psychological consultants, Pamela Foley, Ph.D., and Alexander Golin, Ph.D. *Id.* at 75, 87, 855. Dr. Foley, who provided her assessment in July 2014, opined that Plaintiff is "able to understand and follow simple instructions, to sustain pace, persistence, concentration and attention to simple, repetitive tasks for at least 2-hour segments during a normal workday." *Id.* at 75. She further opined that Plaintiff could "adequately relate and adapt in low-contact work-like settings." *Id.* Dr. Golin, who provided his assessment in October 2014, reached the same conclusions. *Id.* at 87. State agency assessments from Hortensia Kelley, M.D., and Deogracia Bustos, M.D., also concluded that Plaintiff had "no severe physical impairments." *Id.* at 853.

### C.     Procedural History

In April 2014, Plaintiff filed an application for DIB, alleging disability beginning on August 30, 2012. Tr. at 154-57. Plaintiff's date last insured, meaning the last date for which disability requirements can be met, was June 30, 2016. *Id.* at 845. Plaintiff's claim was denied initially and upon reconsideration. *Id.* at 90-95, 98-100. Plaintiff, who was represented by counsel, testified before the ALJ at a hearing on November 23, 2016, where a vocational expert also testified. *Id.* at 35-65. On February 7, 2017, the ALJ issued a decision finding Plaintiff was not disabled. *Id.* at 16-34. On July 6, 2017, the Social Security Administration's Appeals Council denied a request

for review of that decision.  *Id.* at 1-5.  Plaintiff subsequently sought review by this Court.  *See Andrew M. v. Commissioner of Social Security*, No. 17-cv-06701, Dkt. No. 21 (D.N.J. March 28, 2019).

In a decision and order dated March 28, 2019, the undersigned remanded Plaintiff's case to the ALJ.  Tr. at 794-804.  In doing so, this Court found that, in discounting the opinion of Plaintiff's treating psychiatrist, Dr. Iqbal, the ALJ provided "no explanation of the significance of such findings" in Plaintiff's medical records to the extent that they stated Plaintiff's memory and attention span were intact.  *Id.* at 801.  The Court found that references to these medical records, without more, "do not represent substantial evidence contradicting Dr. Iqbal's opinions."  *Id.* Further, this Court opined that the ALJ "does not explain why the record evidence of Plaintiff's daily activities [completing chores and caring for his disabled wife] contradicts Dr. Iqbal's findings regarding Plaintiff's limitations."  *Id.* at 803.

On remand, the ALJ held a second hearing on March 16, 2020, wherein Plaintiff, again represented by counsel, testified along with his wife and a vocational expert.  *Id.* at 750-93. Thereafter, on March 30, 2020, the ALJ again issued a decision finding Plaintiff was not disabled. *Id.* at 839-62.  In June 2022, the Appeals Council denied review of that decision.  *Id.* at 738-44. Plaintiff subsequently initiated the instant action.

## III.   LEGAL STANDARD

### A.     Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g), 1383(c)(3).  The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings.  *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g).  Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are

rational" and substantiated by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citations omitted). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007).

**B.     Determining Disability**

In order to be eligible for benefits under the SSA, a claimant must show he is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Considering the claimant's age, education, and work experience, disability is evaluated by the claimant's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B). A claimant is disabled for SSA purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability are made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)).  Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3); 1382a(3)(D).

### C.    Sequential Evaluation Process For A Continuing Disability

The Social Security Administration follows a five-step, sequential evaluation to determine whether a claimant is disabled under the SSA.  20 C.F.R. §§ 404.1520, 416.920.

First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  *Sykes*, 228 F.3d at 262.  Second, if the claimant is not engaged in such activity, the ALJ determines whether the claimant has any impairments severe enough to limit his ability to work.  *Id.*  Third, if he has any severe impairments, the ALJ considers the medical evidence to determine whether the impairment or combination of impairments is included in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  If the claimant's impairment(s) medically equal one of the Listings, this results in a presumption of disability.  *Sykes*, 228 F.3d at 262.  If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains despite his impairment.  *Id.* at 263.  Fourth, the ALJ must consider whether the claimant's RFC is enough to perform his past relevant work.  *Id.*  Fifth, if his RFC is not sufficient to perform past work, the ALJ must determine whether there is other work in the national economy the claimant can perform.  *Id.*

The evaluation continues through each step unless it is ascertained at any point the claimant is or is not disabled.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant bears the ultimate

burden of establishing steps one through four. *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004). The burden shifts to the Commissioner at step five to prove that the claimant can perform a job that exists in the national economy. *Id.* at 555.

## IV.   DISUCSSION

### A.    Summary of ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from the period of alleged onset, August 30, 2012, through the date last insured, June 30, 2016. Tr. at 845. At step two, the ALJ found that Plaintiff had the following severe impairments: attention deficit hyperactivity disorder, generalized anxiety disorder, post-traumatic stress disorder, persistent depressive disorder and bipolar disorder (20 CFR 404.1520(c)). *Id.* At this step, the ALJ found that Plaintiff's remaining purported ailments were not "severe" impairments because (i) Plaintiff's hypercholesterolemia "appears to have been controlled on medication at all times relevant to this decision"; (ii) the "record fails to document significant ongoing work-related limitations arising from [Plaintiff's eczema] at any time relevant to this decision"; (iii) "[t]here is no evidence that [Plaintiff] has ever . . . sought, required, or received ongoing treatment for chronic headaches"; and (iv) medical records "do not document significant ongoing complaints of fatigue prior to the date last insured." *Id.* at 845-86. The ALJ also found that no evidence in the record supported Plaintiff's assertion that he "suffered a traumatic brain disorder [or cognitive impairment] when he was hit by a car at the age of ten." *Id.* In consideration of the records provided by Plaintiff on this issue, the ALJ found that (i) this evidence post-dates the date last insured, (ii) it "appears to be based in large part on [Plaintiff's] subjective assertions . . . in April 2017," and (iii) Plaintiff was able to graduate college, get a driver's license, manage a household and engage in substantial gainful activity notwithstanding his alleged childhood brain injury. Tr. at 845-46. The ALJ also cited to a July 2014 cognitive and memory test in which Plaintiff was

8

found to, among other things, "relate properly and to be adequately groomed," accurately recall words and digits, correctly count numbers or spell words backwards, and remember information from several days prior. *Id.* at 845, 278.

At step three, the ALJ determined that Plaintiff's conditions did not meet or were not medically equal to the impairments in the Listings. *Id.* at 846-48. Because the ALJ found that Plaintiff's impairments did not equal an impairment enumerated in the Listings, the ALJ then formulated Plaintiff's RFC. *Id.* at 848-49. Based on all the evidence in the record, the ALJ found that Plaintiff could "perform a full range of work at all exertional levels" except that "he was limited to performing simple routine tasks and limited to making simple work-related decisions." *Id.* at 848. Plaintiff "could never interact with the general public, and needed to deal with things rather than people. [He] could only occasionally interact with coworkers, and was unable to perform tandem or teamwork. He could tolerate no more than occasional interaction with supervisors." *Id.* at 848-49.

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work under 20 CFR 404.1565. *Id.* at 855. And at step five, the ALJ determined, after considering Plaintiff's age, education, work experience, and RFC, that jobs exist in significant numbers in the national economy that Plaintiff can perform. *Id.* at 856. The vocational expert testified that Plaintiff would be qualified to operate as a dishwasher, an industrial cleaner, or a janitor. *Id.* at 856-57. In reliance on that testimony, the ALJ found that, through the date last insured, Plaintiff was "capable of making a successful adjustment to other work that existed in significant numbers in the national economy." *Id.* at 857. As a result, the ALJ concluded that a finding of "not disabled" through the last date insured was appropriate. *Id.*

### B.    Plaintiff's Arguments on Appeal

On appeal, Plaintiff primarily argues that the ALJ failed to properly (i) weigh the medical

opinion provided by Dr. Iqbal, as well as the balance of the remaining medical evidence, and (ii) evaluate the subjective witness testimony.  Pl. Br. at 14, 29.  In particular, among other things, Plaintiff contends that the ALJ "erred to the extent he identified selected normal mental status findings [in the medical records and remaining expert opinions] as allegedly inconsistent with the opinions provided by treating psychiatrist Dr. Iqbal."  *Id.* at 16.  He further argues that the ALJ unduly relied on evidence of Plaintiff's daily activity, *id.* at 23, and the lack of his psychiatric hospitalization to support a finding of not disabled, *id.* at 21.  And finally, Plaintiff argues that the ALJ erred in discounting subjective testimony provided by himself and his wife as to his impairments, in favor of the objective medical record.  *Id.* at 31.

### 1.    The ALJ's Weighing of the Expert Opinions and Medical Records[4]

When evaluating conflicting medical evidence, the ALJ "may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'"  *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993).  "The ALJ must consider all the evidence and give some reason for discounting the evidence [ ]he rejects." *Id.*  While an ALJ will "[g]enerally . . . give more weight to the medical opinion of a source who has examined" the patient, 20 C.F.R. § 404.1527(c)(1), the ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence" or "afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided,"  *Plummer*, 186 F.3d at 429; *see also Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1999).  In evaluating any medical opinion, the ALJ weighs a number of factors including, among other things, (i) the length of a treating source's treatment relationship, (ii) the

---

[4] Because Plaintiff's claim for benefits was filed in April 2014, Tr. at 154-57, the Court will apply the Regulations that were in effect prior to the March 27, 2017, amendments, 20 C.F.R. § 404.1527 (addressing standard for evaluating opinion evidence for claims filed before March 27, 2017).

nature and extent of any treating relationship, (iii) the supportability of the medical opinion's explanations, (iv) the consistency of the medical opinion with the remaining record, (v) any specialization that the medical expert has, and (vi) any other pertinent considerations presented to the ALJ by the parties.  20 C.F.R. § 404.1527(c).

Here, the ALJ reviewed and considered the opinion of Plaintiff's treating psychiatrist, Dr. Iqbal, in formulating Plaintiff's RFC.  Tr. at 854.  In so doing, the ALJ gave Dr. Iqbal's opinion "some weight with respect to the mild to moderate limitations cited and the existence of limitations in social functioning and concentration, persistence, and pace."  *Id.*  However, the ALJ did not credit the "marked degree of limitations and the limited cognitive ability cited" in Dr. Iqbal's report insofar as those opinions were "not well supported in the contemporaneous treatment records" or "with the evidence as a whole."  *Id.*  The ALJ also pointed to Plaintiff's "lack of more intensive mental health treatment" and his "reported activities of daily living."  *Id.*  Finally, the ALJ considered Dr. Iqbal's opinion in the context of other medical expert opinions provided by several medical professionals.  *Id.* at 853-55.

The Court finds that the ALJ's assessment of Dr. Iqbal's report is supported by the record. In support of his conclusion and unlike in his prior decision, *see* ECF No. 15 at 6-7, the ALJ points to numerous medical records showing that Plaintiff has "typically been described as alert, oriented, euthymic, logical, and coherent," and having, among other things, normal speech and thought processes, intact memory and concentration, and no aggressive behavior.  Tr. at 854; ECF No. 15 at 9-10; *see also, e.g.*, Tr. at 478 (October 2014 assessment reporting that Plaintiff is "compliant with medications . . . doing better . . . [and] feels comfortable"); Tr. at 460 (January 2015 assessment reporting that Plaintiff "feels in control" and "his coping skills are improving"); Tr. at 445 (March 2015 assessment reporting that Plaintiff "is doing better and is able to focus on his needs, has good insight" and his "[m]ood is stable"); Tr. at 383 (January 2016 assessment reporting

11

that Plaintiff's "mood has been stable, anxiety has been under control . . . [and] sleep and appetite have been normal"); Tr. at 562 (May 2016 assessment reporting that Plaintiff's thought process is coherent, thought association and memory are intact, insight is moderate, judgment is fair and psychotic thoughts are absent). The ALJ was entitled to, and did not err in, limiting the weight afforded to Dr. Iqbal's opinion to the extent it conflicted with years' worth of independent medical records.[5] *See Chandler*, 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."); *Shaud v. Colvin*, No. 15-cv-2278, 2016 WL 1643405, at *9 (D.N.J. Apr. 26, 2016) (finding ALJ "acted within his authority in deciding to assign [treating doctor's] work-related opinions lesser weight" where inconsistent with the treatment records).

Further, the ALJ was entitled to afford due weight to the State agency medical consultants in reaching his RFC and disability determinations. *See Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011) (finding that the "law is clear . . . that the opinion of a treating physician does not bind the ALJ"); *Chandler*, 667 F.3d at 361 ("State agent opinions merit significant consideration as well."). Here, two State agency psychological consultants—Dr. Foley and Dr. Golin—reviewed Plaintiff's record and opined that, among other things, Plaintiff was "able to understand and follow simple instructions" and "perform simple repetitive tasks for at least two-hour segments during a normal workday." Tr. at 855. They further opined that Plaintiff could "adequately relate and adapt in a low contact work setting." *Id.* In consideration of the same medical records relied upon to discredit Dr. Iqbal's opinion, *see supra*, the ALJ concluded that the State consultants' opinions were consistent with the many medical records describing Plaintiff as being oriented, logical, and

---

[5] Plaintiff's assertion that certain treatment records could support a favorable finding does not warrant a different result. Pl. Br. at 18; *see also Amaya v. Commissioner of Social Security*, No. 19-cv-00287, 2020 WL 6336181, at *3 (D.N.J. Oct. 29, 2020) ("[A]lthough the evidence upon which Amaya relies could support a contrary finding, there was substantial evidence to support the finding the ALJ did make.").

coherent, and lacking psychomotor abnormalities, suicidal or homicidal ideations, psychosis and aggressive behavior. *Id.* The Court cannot find that, after reviewing the entire record and affording respective weight to each medical opinion, the ALJ erred in striking this balance. *See Bayers v. Commissioner of Social Security*, No. 13-cv-088, 2014 WL 1316126, at *4-5 (D.N.J. Mar. 31, 2014) (finding ALJ did not err in discrediting doctor's opinions "simply because he was Plaintiff's treating psychiatrist" in favor of state consultants' opinions that were consistent with other evidence in the record).[6]

The Court also recognizes that the ALJ did not reject Dr. Iqbal's opinion wholesale. As Plaintiff himself notes, Pl. Br. at 15, the ALJ afforded some weight to Dr. Iqbal's assessment of Plaintiff's mild to moderate mental limitations, which are reflected in Plaintiff's RFC, Tr. at 848-49. In particular, the ALJ found that Plaintiff must be limited to "performing simple routine tasks" and "making simple work-related decisions." *Id.* The ALJ also found that Plaintiff "could never interact with the general public" and "only occasionally interact with coworkers" and supervisors. *Id.*; *see also Figueroa v. Commissioner of Social Security*, No. 14-cv-7734, 2016 WL 413079, at *8 (D.N.J. Feb. 1, 2016) (finding ALJ, in formulating RFC, appropriately afforded limited weight to certain findings of the treating doctors where those findings conflicted with the medical record,

---

[6] The ALJ also relied on the opinions of Dr. Goldstein, a psychology specialist who examined Plaintiff during the period of alleged disability. *See* Tr. at 854. Consistent with the State consultants' opinions and treatment records, Dr. Goldstein observed "[n]o evidence of psychotic symptoms" in Plaintiff and opined that Plaintiff "does appear capable of managing his own funds." *Id.* at 278. The ALJ gave these opinions "some weight as [they were] supported by [Dr. Goldstein's] mental status examination findings and by tests of memory and cognition" performed on Plaintiff. *Id.* at 854. Insofar as Plaintiff challenges the ALJ's decision not to bolster Dr. Iqbal's conclusions with the opinions of Dr. Steven Hertler and Rebecca Siegel, L.C.S.W., Pl. Br. at 27-29, the Court finds that the ALJ did not err in discrediting those opinions because (i) neither professional treated or examined Plaintiff during the period of alleged disability, (ii) both professionals relied upon alleged treatment records that were not submitted into evidence, and (iii) their opinions were not supported by the remaining evidence pertinent to the relevant period of alleged disability. *Id.* at 853-54; *see also Ortega v. Commissioner of Social Security*, 232 F. App'x 194, 198 (3d Cir. 2007) (denying claimant's appeal predicated on the omission of evidence documenting his "medical condition more than four years after his last insured date[, which] could not have supplied the basis of his entitlement to disability insurance benefits").

opinions of State physicians and descriptions of plaintiff's daily activities). Likewise, as reflected in the aforementioned limitations, the ALJ also "did not merely rubber stamp" the state agency physicians' conclusions as to Plaintiff's RFC. *Chandler*, 667 F.3d at 362; *see also Jones v. Commissioner of Social Security*, No. 10-cv-06083, 2012 WL 1339443, at *7 (D.N.J. Apr. 17, 2012) (finding ALJ did not err in formulating RFC after considering "the combined weight of all the physical examinations"). The ALJ explicitly noted that, in formulating the RFC, the state agency consultants' conclusions were interpreted "in a light most favorable to the claimant." Tr. at 855.

Finally, the Court is not persuaded by Plaintiff's challenge to the ALJ's consideration of evidence regarding Plaintiff's daily activities. [7] Pl. Br. at 23-24. An ALJ is entitled to consider such evidence when it contradicts the claimant's allegations of disability. *See, e.g.*, *Burns v. Barnhart*, 312 F.3d 113, 130 (3d Cir. 2002) (affirming ALJ's denial of benefits where ALJ cited to "parts of [claimant's] testimony, namely those addressing the number and type of activities he engages in on a daily basis, [which] seemed to belie his assertion that the pain is disabling"); *Giese v. Commissioner of Social Security*, 251 F. App'x 799, 803 (3d Cir. 2007) (finding same). In its prior ruling, the Court noted that the ALJ should explain why "the record evidence of Plaintiff's daily activities contradicts Dr. Iqbal's findings regarding Plaintiff's limitations . . . in maintaining social functioning and in maintaining concentration, persistence, and pace." Tr. at 803. Here, the ALJ did so. The ALJ found that "the physical and emotional demands of the claimant's activities

---

[7] The same is true of Plaintiff's challenge to the ALJ relying on Plaintiff's lack of psychiatric hospitalization. Pl. Br. at 21-22. The ALJ did not rely on this fact in isolation, but rather, considered it together with other evidence in the record. *See* Tr. at 854-55 (discounting Dr. Iqbal's opinion by pointing to Plaintiff's lack of hospitalization, reported daily activities, over 15 examples of contradictory medical treatment records and competing opinions of at least two State consultants and an examining specialist); *see also Jones o/b/o E.D. v. Kijakazi*, No. 21-cv-2133, 2022 WL 17660974, at *9 (M.D. Pa. Nov. 8, 2022) (finding ALJ did not err in citing to claimant's lack of hospitalization or inpatient mental health treatment where "there [was] no indication that this evidence was a driving factor in the ALJ's determination").

. . . are inconsistent with the nature and degree of impairment he alleges." *Id.* at 852. Specifically, in addition to the evidence suggesting that Plaintiff provided his wife "a lot of physical assistance," the ALJ also pointed to evidence that, during the period of alleged disability, Plaintiff "read, learned new tech skills on the internet, and watched television/movies without apparent difficulties concentrating or persisting." *Id.* Regarding social functioning, the ALJ found that Plaintiff "was able to maintain at least some friendships and talked to one friend on the telephone two to three times a month." *Id.* Thus, the ALJ's conclusion that evidence in the record contradicts the alleged severity of Plaintiff's impairments is supported by "more than a mere scintilla" of evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

Accordingly, the ALJ's assessment of the expert opinions and medical treatment reports in reaching his conclusion is adequately supported by the record.

### 2.    The ALJ's Weighing of Subjective Testimony

The ALJ, as the fact finder, has the sole responsibility to weigh a claimant's complaints about his symptoms against the record as a whole. *See Zirnsak v. Colvin,* 777 F.3d 607 (3d Cir. 2014) (citing *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009)); 20 C.F.R. § 404.1529(a). The ALJ is guided by a two-step framework when evaluating this evidence. *Costello*, 2022 WL 807382, at *5 (citing 20 C.F.R. § 404.1529). First, "the ALJ must determine whether there is an underlying medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms." *Id.* And second, "the ALJ must evaluate the 'intensity, persistence, and limiting effects' of the claimant's symptoms to determine the extent to which they limit the claimant's functioning." *Id.* If the subjective statements conflict with the objective medical evidence, the ALJ may discredit them. *Id.*

Here, the ALJ found that Plaintiff suffered from severe impairments, including attention deficit hyperactivity disorder, generalized anxiety disorder, post-traumatic stress disorder,

persistent depressive disorder and bipolar disorder.  Tr. at 845.  However, the ALJ disagreed with the subjective evidence—that is, testimony from Plaintiff and his wife—concerning the intensity, persistence and limiting effects of those impairments.  *Id.* at 846, 849-50, 852; *see also Chandler*, 667 F.3d at 363 (finding that "the ALJ is not required to credit" a claimant's subjective complaints of pain and limitations).  Relying on the same arguments used to challenge the ALJ's assessment of the medical evidence, Plaintiff contends that the ALJ "erred by concluding that Plaintiff's treatment history with some improvement and stabilization as well as his activities of daily living conflict with a finding of mental disability."  Pl. Br. at 31.

Plaintiff's arguments here do not establish a lack of substantial evidence as to the ALJ's credibility determination.  First, the ALJ cited to numerous medical records over a prolonged period of time describing Plaintiff as "alert, oriented, euthymic, logical, and coherent."  Tr. at 850.  Treatment records also described Plaintiff as having "normal speech, normal thought processes, normal abstractions, intact associations, and full, normal, and/or appropriate affect."  *Id.*  Records, including a July 2014 cognitive and memory test report, also indicated that Plaintiff  was able to complete multiple recall challenges.  *Id.*  The ALJ also cited to treatment records suggesting that Plaintiff's limited social engagement was exacerbated, not by his mental impairments but, by the stress of caring for his wife.  *Id.* at 851; ECF No. 15 at 15.  At the administrative hearing, Plaintiff testified that he could comfortably lift and carry up to 15 pounds and was completing household chores to aid his wife.  Tr. at 768-70.  The ALJ also relied on evidence that Plaintiff was reading, learning new tech skills, watching television without trouble concentrating and maintaining at least some friendships.  *Id.* at 852; ECF No. 15 at 15.  Because Plaintiff's subjective complaints were inconsistent with these specific elements of the record, the ALJ justifiably discounted them.  Accordingly, the ALJ properly "g[a]ve some indication of the evidence which he rejects and his reason(s) for discounting such evidence," and thus satisfied his obligation.  *Burnett,* 220. F.3d at

121; *see also Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (explaining an ALJ is not required "to use particular language or adhere to a particular format," but only to "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review").

Plaintiff also challenges the ALJ's failure to credit testimony provided by Plaintiff's wife. Pl. Br. at 31.  In his decision, the ALJ recounted her written and oral testimony, observing that it was "from a non-medical source" and therefore did "not constitute [a] medical opinion[ ]."  Tr. at 852-53.  The ALJ further noted that her testimony as to Plaintiff's impairments was inconsistent with the balance of the remaining record, primarily Plaintiff's treatment records and the competing medical opinions.  *Id.*  In particular, the ALJ found that Plaintiff's wife's testimony regarding the limited extent to which Plaintiff cared for her was inconsistent with treatment records stating that Plaintiff cared for her "for most of 2015 and 2016" and provided "lots of physical assistance" including "all of the household chores."  *Id.* at 852, 854.  Based on these considerations, the ALJ's decision to discount the observations of Plaintiff's wife was appropriate.  *See Gonzales v. Comm'r of Soc. Sec.*, No. 19-CV-21276, 2021 WL 5027986, at *5 (D.N.J. Oct. 28, 2021) (finding it was appropriate for ALJ to discount report submitted by Plaintiff's mother "because [she] was not an acceptable medical source"); *see also* Social Security Ruling 06-03p, 71 Fed. Reg. 45593-03, 45596 (Aug. 9, 2006) (stating ALJ may, when faced with evidence from a claimant's family members, "consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors").[8]

---

[8] The Court is not persuaded by Plaintiff's assertion that the "ALJ failed to consider Plaintiff's [ ] exemplary work history" in determining Plaintiff's credibility.  Pl. Br. at 31-32; *see also Ayers v. Astrue*, 724 F. Supp. 2d 471, 479 (D. Del. 2010) ("Generally, the A.L.J.'s assessment of a plaintiff's credibility is afforded great deference, because the A.L.J. is in the best position to evaluate the demeanor and attitude of the plaintiff" (citing *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001))).  As discussed above, the ALJ's assessment of the subjective evidence is well-supported by the record.

**V.**     **<u>CONCLUSION</u>**

For the reasons above, the ALJ's decision is affirmed.  An appropriate Order will follow.

**DATE:** September 20, 2023

s/ Claire C. Cecchi

**CLAIRE C. CECCHI, U.S.D.J.**

18